# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS MATTHEWS, individually and on behalf of a class of all persons and entities similarly situated,<br><br>       Plaintiff,<br><br>vs.<br><br>GERBER LIFE INSURANCE COMPANY and JOHN DOE CORPORATION d/b/a LEGACY QUOTE,<br><br>       Defendants. | Case No. 7:23-cv-00552-VB |

## PLAINTIFF'S OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS

### I. INTRODUCTION

Gerber Life Insurance Company's ("Defendant" or "Gerber Life") remarkable position in its motion to dismiss–that a residential cellular telephone is not entitled to the protections of the National Do Not Call Registry–takes a hacksaw to the protections the Registry provides residential telephone subscribers. More importantly, Defendant's position has already been rejected by the FCC, numerous district courts, and the only circuit to address the issue. As such, Gerber Life's sweeping proclamation that treats the Do Not Call Registry as unmalleable in that no cellular telephone number is ever permitted to invoke the protections of the National Do Not Call Registry must be rejected.

The endgame is this: Mr. Matthews is a private citizen who uses his cellular telephone line at issue as his residential phone line. Thus, the FCC's declaration that wireless subscribers

who place their numbers on the DNC Registry, like Mr. Matthews, are residential subscribers, must apply to the Plaintiff.

## II. SUMMARY OF THE PLAINTIFF'S CLAIMS AND FACTUAL BACKGROUND

In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227). In 2003, President Bush signed the "Do-Not-Call Implementation Act," Pub. L. No. 108-10, 117 Stat. 557 (2003). The "Do-Not-Call Implementation Act" mandated that the FCC "issue a final rule . . . under the Telephone Consumer Protection Act" regarding the Do-Not-Call Registry regulations. 15 U.S.C. §§ 6151, 6153 (2003). The FCC followed Congress' mandate. In 2003, the FCC issued a final rule in which the FCC unequivocally mandated that the TCPA's protections apply to cell phones registered on the National Do-Not-Call Registry, which allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

Plaintiff alleges as follows: Gerber Life provides insurance services. *See* ECF No. 15 at ¶ 17. Gerber Life utilizes telemarketing to promote its products and services and solicit new customers generate new customers. *Id.* at ¶ 18. Gerber Life's telemarketing efforts include using third parties who are compensated based on the amount of new customers they can bring to Gerber Life and potential new customers transferred to Gerber Life's call center. *Id.* at ¶ 19. Despite registering his number on the National Do Not Call Registry in August of 2021, the Plaintiff received telemarketing calls from Gerber Life's call center on at least September 9 and 13 and 15, 2022. *See* ECF No. 1 at ¶ 21-26.

Because of the *en masse* nature of Gerber Life's calling campaign, the Plaintiff has filed this matter as a putative class action on behalf of the following class of individuals:

> **National Do Not Call Registry Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls from or on behalf of Gerber Life and/or John Doe Corporation (3) within a 12-month period, (4) from four years prior the filing of the Complaint.

*Id.* at ¶ 62.

### III. ARGUMENT

**A.  The Plaintiff Has Pled That His Number was her Residential Telephone Number. Nothing Further is Required to State his TCPA Claim.**

The Plaintiff pleads the following dispositive facts regarding his residential telephone line. First, the Plaintiff alleged that his telephone number, 540-558-XXXX, has been on the National Do Not Call Registry since August of 2021. *See* ECF No. 15 at ¶ 21. He further alleges that he uses this number for personal, residential and household reasons. *Id.* at ¶ 22. These allegations are sufficient. *Rosenberg v. LoanDepot.com LLC*, Civil Action No. 19-10661-NMG, 2020 U.S. Dist. LEXIS 11928, at *27 (D. Mass. Jan. 24, 2020) ("Rosenberg submits that he placed his cellular phone number on the National Do Not Call registry and that he uses his cell phone as his residential line. Those allegations are adequate for the purposes of pleading.").

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The Plaintiff does not make lengthy allegations because none are required for the simple factual proposition that he uses his cellular telephone line for residential purposes. *Clemons v. Bradford O'Neil Agency, LLC,* No.

21-cv-678, 2021 U.S. Dist. LEXIS 244116, at *11 (D. Mo. Dec, 22, 2021) ("While the question of whether Clemons uses her cell phone for personal and residential purpose has important legal consequences for this case, Clemons's allegation is a factual one and in no way conclusory. Clemon's pleading places the Agency on notice that one of the issues in the case is whether Clemons uses her cell phone for residential purposes. Rule 8 requires nothing more.").

The proposition is especially true when considering that the complaint must be liberally construed in favor of the plaintiff. *Irish Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998). A court may not dismiss a case through judgment on the pleadings "unless it is satisfied that the complaint cannot state any set of facts that would entitle him to relief." *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994). A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46. Mr. Matthews' allegations are plain and straightforward because he is alleging an unremarkable proposition: his telephone line is used for personal and household purposes because it is a residential line. Nothing more is required.

Courts that have analyzed the question on motions to dismiss have repeatedly rejected similar arguments. *See Barton v. Temescal Wellness, LLC*, No. 4:20-cv-40114-TSH, 2021 U.S. Dist. LEXIS 42211, at *13-14 (D. Mass. Mar. 8, 2021) ("Because Barton has pled that her cell phone number is registered on the Do Not Call Registry and the Do Not Call Registry is only open to residential subscribers and keeping in mind that at the motion to dismiss stage all reasonable inferences are to be made in her favor, I find that Barton has sufficiently pled that she is a residential subscriber for the purposes of her mobile phone number to survive the Rule 12(b)(6) motion."). Allegations that the plaintiff uses the phone for personal residential purposes

are sufficient. *See, e.g.*, *Boardman v. Green DOT Corp.*, No. 21-cv-174, U.S. Dist. LEXIS 156403, at *1, 4-6 (W.D.N.C. Aug. 19, 2021) (allegation that plaintiff received text message on her "residential cellular telephone" sufficient to survive motion to dismiss); *Sagar v. Kelly Auto Grp., Inc.*, No. 21-cv-10540, 2021 U.S. Dist. LEXIS 227781, at *16 (D. Mass. Nov. 29, 2021) ("Kelly Auto argues that Sagar has not alleged any facts supporting his 'bare formulaic assertions' that his number is a residential telephone line . . . . This argument is a non-starter. Sagar has plausibly pleaded that he uses his cell phone for personal purposes as a residential line and that he has put it on the National Do-Not-Call Registry."); *Becker v. Pro Custom Solar LLC*, No. 219CV535FTM29NPM, 2020 WL 474647, at *6 (M.D. Fla. Jan. 29, 2020) ("Defendant also argues it is entitled to dismissal of Count II because Plaintiff failed to plead that his phone is a "residential" line. . . . However, Plaintiff alleges . . . that his cell phone number 'is not associated with a business and is for personal use.' These allegations, coupled with the TCPA's presumption that 'wireless subscribers who ask to be put on the national do-not-call list are 'residential subscribers,'' is sufficient to allege that Plaintiff is a residential telephone subscriber.") (cleaned up).

### B. The DNC Registry Applies to all Consumer Telecommunications Services

#### 1. A Textualist Reading of the TCPA Counsels Against Defendant's Interpretation

Defendant's argument that a cell phone cannot be a "residential" telephone number, and therefore that no cellular telephone is entitled to the TCPA's Registry protections, rests on a statutory interpretation that is "a bit strained as an initial matter." *Riley v. California*, 573 U.S. 373, 397 (2014). As with any question of statutory interpretation, the Court's inquiry "begins with the text." *Ross v. Blake*, 578 U.S. 632, 638 (2016).

In enacting the Do Not Call provisions of the TCPA, Congress chose to extend protection to "residential telephone subscribers." *See* 47 C.F.R. § 64.1200(c)(2) (limiting DNC Registry to "residential" subscribed numbers).[1] Reading the term "residential" to exclude other services, such as cellular telephone services, used for personal, household purposes is inconsistent with multiple canons of construction. Without a controlling statutory definition, as here, the term "residential" takes on its "ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). And, under the fixed-meaning canon, "[w]ords must be given the meaning they had when the text was adopted." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 78 (2012).

With respect to the TCPA, there are potentially two relevant time frames to consider: 1934, when the Telecommunications Act of which the TCPA is a part was enacted, and 2003, when Congress passed the Do-Not-Call Implementation Act. Regardless of which the Court chooses, the meaning of the term "residential," as an adjective modifying "telephone subscribers," is the same. "Residential" means "used as a residence *or by residents*; adapted to (1936)/restricted to (2003) . . . residences; of or connected with (1936)/relating to (2003) . . . residence or residences." *Compare* Webster's New Collegiate Dictionary, Eleventh Ed. (2003) *with* Webster's Collegiate Dictionary (1936) (emphasis added) (cleaned up).

Especially in Webster's 2003 sense of "residential" meaning "restricted to" residences, the term "residential" is contrasted with the adjective "nonresidential," which is "not used as" or "not restricted to" residences or by residents. Webster's New Collegiate Dictionary, Eleventh Ed. (2003). In using "residential" language, Congress realized that, in the future, traditional residential forms of telecommunication like copper landlines may come to be supplanted by

other technologies, like ISDN and T1 lines, Fiber Optics, VoIP, and cellular technologies. In using the term "residential," Congress meant what it said. It meant to contrast residential service *uses* from nonresidential *uses* and restrict DNC Registry protections to the former, regardless of the type of technology that the consumer chooses to use or a technology that can change.

Defendant's reading, however, arbitrarily limits the scope of the term "residential" to read "copper landline." No part of the statute contains a suggestion that the general term "residential" should be given such a limited, narrow meaning. Importantly, at the time the DNC Registry provisions of the TCPA were enacted, the Code of Federal Regulations specifically relating to "Telecommunications" defined a "residential subscriber" as a "subscriber to a telephone exchange service that is not a business subscriber." *See* 47 C.F.R. § 64.2305(d).[2] A "business subscriber" was defined as a "subscriber to a telephone exchange service for businesses." *See* 47 C.F.R. § 64.2305(b). Accordingly, consumers who subscribe to telephone exchange services are protected by the DNC Registry. Businesses who subscribe to telephone exchange services for businesses are not.

    2.    <u>The Hobbs Act Precludes this Court from Invalidating the FCC's 2003 Order</u>

In enacting the Do Not Call provisions of the TCPA, Congress explicitly acknowledged that the section was appliable to "wireless telephone numbers," thus easily clarifying that it meant to extend protection to residential wireless telephone numbers. In this regard, the Code of Federal Regulations at 47 C.F.R. § 64.1200(e) also provides that the

---

[2] The regulatory definitions of "business subscriber" and "residential subscriber" were enacted in 1999, prior to Congress' creation of the Do Not Call Registry in 2003. *Compare* 47 C.F.R. § 64.1200(e), *citing* 18 F.C.C. Rcd. 14014, 14032, 14043; 2003 FCC LEXIS 3673 at ¶¶ 22, 42 (June 26, 2003) (Do Not Call Registry was enacted in 2003) *with* 47 C.F.R. § 64.2305(b) and (d) (effective date of regulations is October 5, 1999).

> "rules set forth in paragraph (c)[3] … of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to **wireless telephone numbers** to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991."

*See* 47 C.F.R. § 64.1200(e) (emphasis added). Of course, in accord with the whole-text and harmonious-reading canons, these provisions complement the former use of "residential," as both can be made to stand together. *See* Scalia & Garner at 145, 155. Defendant is unable to show how its reading, which excludes wireless telephone numbers, nevertheless permits this Court to read the appropriate implementing regulations in such a harmonious manner.

In 2003, the FCC interpreted this provision and noted that "there is nothing in section 227 to suggest that only a customer's 'primary residential telephone service' was all that Congress sought to protect through the TCPA." *In re Rules & Regs. Implementing the TCPA of 1991*, 18 F.C.C. Rcd. 14014, 14038, ¶ 35 (July 3, 2003). The FCC "conclude[d] that wireless subscribers may participate in the national do-not-call list." *Id.* at 14039, ¶ 36. "[W]e will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'" *Id.*

Beyond the text itself, which serves as the "starting point" for this Court's inquiry, however, the Hobbs Act requires that this Court adopt the FCC's interpretation of the statutory text. The Hobbs Act grants the federal courts of appeal "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of all final orders of the [FCC] made reviewable by section 402(a) of title 47." 28 U.S.C. § 2342(1). Thus, "exclusive jurisdiction to enjoin or determine the validity of final FCC orders [rests] in the Courts of Appeals." *Nicholas v. Trump*, 433 F. Supp. 3d 581, 592 (S.D.N.Y. 2020) (citing 28

---

[3] Paragraph (c) of 47 C.F.R. 47 C.F.R. § 64.1200 relates to the restrictions imposed on telemarketers by the TCPA and the DNC Registry.

U.S.C. § 2342(1)); *see also FCC v. ITT World Commc'ns, Inc*., 466 U.S. 463, 468 (1984) ("Exclusive jurisdiction for review of final FCC orders, . . . lies in the Court of Appeals.") (citing 28 U.S.C. § 2342(1), and 47 U.S.C. § 402(a)). As a result, "a district court may review neither the FCC's regulatory actions nor the outcome of those actions." *Kahn v. iBiquity Digital Corp.,* 2006 U.S. Dist. LEXIS 89049, 2006 WL 3592366, at *3 (S.D.N.Y. Dec. 7, 2006) (citing *In re Nextwave Personal Comm'ns, Inc.,* 200 F.3d 43, 52 (2d Cir.1999)), *aff'd*, 309 F. App'x 429 (2d Cir. 2009).

       3.       Courts have Repeatedly Held that the Do Not Call Registry Protection Applies to Cell Phones, Including the Only Appellate Court to Consider the Issue.

Consistent with text, history, and precedent, courts have repeatedly recognized the protections afforded wireless numbers by the TCPA and the DNC Registry. *See Hodgin v. Parker Waichman LLP*, Civil Action No. 3:14-cv-733-DJH, 2015 U.S. Dist. LEXIS 192262 *9 (W.D. Ky. Sep. 30, 2015) (finding defendant's "assertion that cell phone numbers are not allowed on the national do-not-call list . . . meritless"); *Stevens-Bratton v. Trugreen, Inc.,* 437 F.Supp.3d 648 (W.D. Tenn. Feb. 4, 2020) (reviewing applicable regulations and concluding that cell phones may be listed on the DNC Registry); *Boardman v. Green Dot Corp.,* No. 3:21- CV-00174-FDW-DSC, 2021 WL 3699856, at *2 (W.D.N.C. Aug. 19, 2021) (Denying motion to dismiss holding "a cellphone may plausibly be alleged as residential for purposes of the TCPA."); *Smith v. Truman Rd. Dev., LLC,* No. 4:18-cv-00670-NKL, 2020 U.S. Dist. LEXIS 74330 *37 (W.D. Mo. Apr. 28, 2020) (rejecting contention that wireless numbers cannot be listed on the DNC Registry); *Izor v. Abacus Data Sys., Inc.*, No. 19-CV-01057-HSG, 2019 U.S. Dist. LEXIS 130865, 2019 WL 3555110, at *2 (N.D. Cal. Aug. 5, 2019) (reasoning that TCPA regulations will presume wireless subscribers who ask to be put on the national do-not-call list to be "residential subscribers," because "there is a growing number of consumers

who no longer maintain wireline phone service, and rely only on their wireless telephone service.") (quoting *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. at ¶¶ 35-36); *Hand v. Beach Entm't Kc,* 456 F. Supp. 3d 1099, 1120 (W.D. Mo. 2020) (rejecting claim that the TCPA does not apply to wireless numbers and certifying a DNC class action); *Mestas v. CHW Grp. Inc.*, No. 19-CV-792 MV/CG, 2020 U.S. Dist. LEXIS 236357 *32 (D.N.M. Dec. 16, 2020) (rejecting claim that wireless numbers cannot be listed on the DNC Registry).

And, Judge Oetken eloquently wrote while denying a similar motion to dismiss last year:

> the FCC has explicitly determined that the DNC Registry applies to cellphone numbers. *See* 47 C.F.R. § 64.1200(e); *see also In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039, ¶ 36 (F.C.C. 2003) ("[W] will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'"). Consistent with this legislative authority, courts have repeatedly recognized the protections afforded to wireless numbers by the TCPA and the DNC Registry…Though Rose does not specifically allege that his cellphone number was a residential one, he alleges that it was a personal number that he did not use for business purposes (*see* Dkt. No. 1 ¶ 33) and that it has been listed on the DNC Registry since 2004 (*see* Dkt. No. 1 ¶ 32). At the motion to dismiss stage, these allegations are sufficient for Rose's TCPA claims to move forward.

*Rose v. New Tsi Holdings, Inc.,* No. 21-CV-5519 (JPO), 2022 U.S. Dist. LEXIS 56525, at *7 (S.D.N.Y. Mar. 28, 2022). This Court should hold the same.[4]

---

[4] Further citations abound. *Atkinson v. Choice Home Warranty*, No. 22-04464, 2023 WL 166168, at *4-5 (D.N.J. Jan. 11, 2023); *Noviello v. Holloway Funding Group,* No. 3:22-cv-52-BN, 2023 WL 128395, at *5-6 (N.D. Tex. Jan. 9. 2023); *Long v. Cat Exteriors*, No. SA-22-CV-00923-JKP, 2022 WL 17744052, at *3-4 (W.D. Tex. Dec. 15, 2022); *Escano v. RCI LLC*, No. 22-360-GJF, 2022 WL 17251273, at *16 (D.N.M. Nov. 28, 2022); *Blalack v. RentBeforeOwning.com*, No. CV21- 09048-JAK, 2022 WL 7320045, at *2-4 (C.D. Cal. Oct. 11, 2022); *Ewing v. CSOLAR*, No. 22- CV-0720-WQH, 2022 WL 4449326, at *3-4 (S.D. Cal. Sept. 22, 2022); *Spurlark v. Dimension Serv. Corp.,* No. 2:21-cv-3803, 2022 WL 2528098, at *4 (S.D. Ohio July 7, 2022); *Gill v. Align Tech.,* No. 21-CV-631-JPS, 2022 WL 1540016, at *3 (E.D. Wisc. May 16, 2022); *Miholich v. Senior Life Ins. Co.,* No. 21-CV-1123-WQH, 2022 WL 1505865, at *3-4 (S.D. Cal. May 12, 2022); *Dudley v. Vision Solar LLC*, No. 21-659, 2021 WL 3077557, at *5 (E.D. Pa. July

Indeed, the Fourth Circuit in *Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643, 657 (4th Cir. 2019) concluded the TCPA's language was clear and that numbers on the Do Not Call Registry, by virtue of their mere registration, are *presumptively residential*:

> The statute marks its own boundary. Suit can only be brought by those who receive multiple violative calls. Calls are only violative if the phone number was on the Do-Not-Call registry. And **a number can only be placed on such a registry if the number is a residential line.** Whatever work we may be required to do for more broadly worded statutes, Congress did the work for us here.

*Id. at 657* (emphasis added). If Congress intended to limit "residential subscribers" to users of wireline devices, it would have done so. Congress instead chose to focus on the subscriber's *use* of the phone, rather than the *technology* by which a given phone functions. The plain language of the statute therefore supports the FCC's rules and regulations. Defendant's approach amounts to imaginative reconstruction, "putting [it]self in the place of the enacting legislature and trying to divine what the collective body would have wanted done." Scalia & Garner at 325.

The cases cited by the Defendant are unpersuasive. For example, in *Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356 (E.D. Pa. 2019), the plaintiff received multiple telemarketing calls to his cellular telephone from the defendant in alleged violation of the TCPA and filed suit. Despite The court *sua sponte* expressed its own divination whether cellular telephone numbers were covered by the TCPA's DNC provisions. The court nevertheless awarded the plaintiff $33,000 in statutory damages.[5] Defendant also relies on *Cunningham v.*

---

21, 2021); *McDermet v. DirecTV, LLC*, No. 19-11322-FDS, 2021 WL 217336, at *12 (D. Mass. Jan. 21, 2021); *Strange v. ABC Co.,* No. 19-1361, 2021 WL 798870, at *3-4 (W.D. La. Mar. 1, 2021).

[5] Indeed, subsequent decisions from the Eastern District of Pennsylvania have made clear that the TCPA's Do Not Call protections apply to cell phones. *See Marks v. Unique Lifestyle Vacations, LLC*, No. 20-4915-KSM, 2021 WL 5495778 (E.D. Pa. Nov. 22, 2021) ("we find that plaintiff's allegations pertaining to his cell phone—namely, that he used the cell phone for personal purposes, including booking vacations—are sufficient" to establish plaintiff was a "residential subscriber").

*Politi*, 2019 U.S. Dist. LEXIS 102447 (E.D. Tex. April 2019), an outlier case which failed to acknowledge 47 C.F.R. § 64.1200(e) or 18 F.C.C. Rcd. 14014, at ¶ 33, ¶ 36, authorities that unequivocally recognize that wireless numbers can be listed on the DNC Registry. At least one court interpreting *Politi* has recognized it as an "isolated authority" that is contrary to "common sense." *Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 131 (N.D. Tex. 2020). The remaining cases cited by the Defendant also relate to *pro se* cases filed by the same plaintiff that pursued the case in *Politi*.

Indeed, even the Magistrate Judge's opinion in *Gaker v. Q3M Ins. Sols.,* No. 3:22-CV-00296-RJC-DSC, 2023 U.S. Dist. LEXIS 44919 (W.D.N.C. Feb. 7, 2023), relied upon by the Defendant, acknowledges that other district courts in the Fourth Circuit have held that wireless numbers are entitled to DNC protections. *Id.* at *5 (*citing Boger v. Citrix Sys. Inc.,* No. 8:19-cv-01234-PX, 2020 U.S. Dist. LEXIS 71072, 2020 WL 1939702, at *4 (D. Md. Mar. 3, 2020) ("[T]he Complaint does not foreclose that [the plaintiff's] cell phone functioned as a residential [*6] telephone number for the purposes of the statute.")).[6] *Gaker* also relied on the erroneous holding in the *Politi* case cited above, which has been criticized by other courts and labeled contrary to common sense. *Gaker* further relied heavily on the fact that cellular telephones were mentioned explicitly elsewhere in the TCPA but not in the language of 227(c)(5). However, this does not pose a textual problem for the Plaintiff. The text of 227(c)(5) was drafted and enacted *prior to* the creation of the National Do Not Call Registry or its implementing regulations. As such, Congress saw no need to include in the statutory text what it

---

[6] The plaintiff in *Gaker* has appealed the Magistrate Judge's Opinion to the District Judge. *See* ECF No. 29, 3:22-CV-00296-RJC-DSC. However, the parties then jointly requested a stay of that case pending settlement discussions. *Id.* at 31.

- 12 -

wrote would be subject to future rulemaking. Indeed, if Congress had desired to influence or guide such rulemaking, it would have included such provisions in the enabling text. It didn't.

As explained above, the "residential" telephone line requirement casts a far broader net than the type of device or technology that receives the calls. Someone's residential phone can be several different types of phone lines, copper, fiber, T1, IDSN, wireless, or wireline. The dispositive analysis is its treatment and utilization, as the Communications Act itself defines and the statutory text illuminates. *Compare* 47 C.F.R. § 64.2305(d) (residential) *with* 47 C.F.R. § 64.2305(b) (nonresidential).

As the Ninth Circuit held in *Chennette v. Porch.Com, Inc.,* 50 F.4th 1217 (9th Cir. 2022):

> Defendants argue that because plaintiffs use their cell phones both for personal calls and for calls associated with their home improvement businesses, they do not qualify as residential subscribers… The disputed question is whether a cell phone that is used for both business and personal purposes can be a "residential" phone within the meaning of § 227(c). In the 2003 TCPA Order, the FCC concluded that a cell phone registered on the do-not-call registry is presumptively a residential phone . . . Relying on the FCC's regulations and orders, we agree with the view of the majority of the district courts and conclude that a presumptively residential cell phone can be residential even when used for both personal and business purposes.

*Id.* at 1223-1224 (9th Cir. 2022). Congress' intent in enacting the TCPA and the regulations enacting the DNC Registry was to protect the *personal* phone numbers of consumers from intrusive telemarketing calls. *See Breda v. Cellco P'ship,* 934 F.3d 1, 11 (1st Cir. 2019) (recognizing the TCPA as a remedial consumer statute to be interpreted broadly to effectuate its intent). Denying consumers the privacy protections afforded by the TCPA to their DNC-registered wireless numbers or other non-copper residential landlines because their primary telephone is not based on traditional wireline technology is inconsistent with this directive.

Indeed, in another TCPA case involving *text messages* sent to a National Do Not Call Registry registered cellular number, a district court *granted summary judgment for the Plaintiff*:

> Defendant next argues that because plaintiff used his cellular number for both personal and business purposes, it was not a residential line and therefore should not be afforded protection under the TCPA. (#202 at 12-13.) Plaintiff cross-moves for summary judgment on this issue, contending that he was a residential subscriber because his cellular number was registered to him as an individual, was billed to his home address, and was paid for as part of a family plan. (#221-2 at 7-8, 10; #209 at 22.)…
>
> Defendant argues that a residential number and a number used for personal purposes are not equivalent under the TCPA and its regulations, and that DNC protection is limited to phones used in a residential context. (#230 at 3-4.) Yet by extending DNC protection to cellular numbers, which are inherently mobile and not limited to use in the home, it is reasonable to interpret the TCPA and its relevant regulations as extending DNC protection to cellular numbers that are not used exclusively in the home. *See In re Rules* 2003 ¶ 36 ("[A]lthough Congress expressed concern with residential privacy, it also was concerned with the nuisance, expense and burden that telephone solicitations place on consumers."); *id.* (separate statement of FCC Chairman Michael K. Powell) (noting that the FCC's revised rules "make[] the American consumer's toolbox more complete by creating a national do not call list and strengthening and modifying our other longstanding protections under the TCPA. Our goal: to maximize consumers' ability to control the messages they receive on their *personal phones* and faxes." (emphasis added)); *see also McEwen v. NRA of Am.*, No. 2:20-cv-00153, 2021 U.S. Dist. LEXIS 72133, at *16 (D. Me. Apr. 14, 2021) ("[T]he FCC has extended its do-not-call regulations *to encompass both residential land lines and personal cellphones."* (emphasis added)).

*Mantha v. Quotewizard.com, LLC,* No. 19-12235-LTS1, 2021 U.S. Dist. LEXIS 245059, at *11-14 (D. Mass. Dec. 3, 2021).

Of course, while the Plaintiff asserts that this Court should find the same, summary judgment is another ruling for another day. For now, the Court should liberally construe the Complaint in favor of the Plaintiff and deny the Defendant's motion that would require the blanket finding that cellular telephone numbers are not entitled to the protection of the National Do Not Call Registry and open the floodgates of calls to cell phones on the Registry.

- 14 -

## IV. CONCLUSION

Based on the foregoing, Defendant's motion should be denied in its entirety.

RESPECTFULLY SUBMITTED AND DATED this 18th day of May, 2023.

PARONICH LAW P.C.

By: */s/ Anthony I. Paronich*
Anthony I. Paronich
Email: anthony@paronichlaw.com
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100

*Attorneys for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that, on May 18, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send notification to all attorneys of record.

*/s/ Anthony I. Paronich*
Anthony I. Paronich